[Civ. No. 66464. Second Dist., Div. Seven. Mar. 28, 1983.]

FRANK E. MUNOZ, Cross-complainant and Appellant, v. THOMAS R. DAVIS, Cross-defendant and Respondent.

**COUNSEL**

Lewis, D'Amato, Brisbois & Bisgaard, David. E. Reynolds and Louis R. De Stefano for Cross-complainant and Appellant.

Gilbert, Kelly, Crowley & Jennett, Patrick A. Mesisca, Jr., and Michael I. D. Mercy for Cross-defendant and Respondent.

## OPINION

## JOHNSON, J.—

### FACTS AND PROCEEDINGS BELOW

In June 1979 plaintiff Raul Rodriguez was a passenger in an automobile which collided with an automobile driven by the cross-defendant, Thomas R. Davis. Rodriguez retained Frank E. Munoz to represent him in a claim for personal injuries against Davis. According to Rodriguez, Munoz failed to file a complaint within the statutory time period. Rodriguez then sued Munoz for legal malpractice alleging that as a result of Munoz' negligence in failing to file the complaint within the prescribed period Rodriguez' cause of action is now barred by the statute of limitations. Munoz answered Rodriguez' complaint admitting that he is an attorney; that he was retained to represent Rodriguez in his claim against Davis; and denying the remaining material allegations of the complaint.

Concurrent with his answer, Munoz filed a cross-complaint against Davis for equitable indemnification. The cross-complaint alleges that Davis was negligent in operating his automobile and that if Munoz is liable to Rodriguez for any damages those damages are the proximate result of Davis' negligence; therefore Munoz is entitled to partial indemnification from Davis. Davis demurred to the cross-complaint on the ground inter alia that it failed to state a cause of action. The trial court sustained the demurrer without leave to amend.

### SUMMARY OF DECISION

If the demurrer was properly sustained on any ground then the trial court's ruling must be upheld on appeal. (*Sequoia Pine Mills, Inc.* v. *Superior Court* (1968) 258 Cal.App.2d 65, 68-69 [65 Cal.Rptr. 353].)

We have identified two grounds which justify sustaining the demurrer to the equitable indemnity claim without leave to amend. First, we hold that a negligent lawyer is not entitled to equitable indemnity from a negligent driver because the lawyer and driver are not jointly and severally liable to the injured person for the lawyer's negligence. Second, as an independently sufficient ground, we hold that equitable and policy considerations render equitable indemnity unavailable to shift a lawyer's malpractice liability to the tortfeasor whose actions happened to provide the lawyer with the opportunity to commit malpractice. Therefore we affirm the trial court's ruling.

BRIEF HISTORY OF THE DOCTRINE OF EQUITABLE INDEMNIFICATION

A brief history of the doctrine of equitable indemnification is an important aid to understanding Munoz' claim for relief and the reasons why the claim fails.

Until 1958, California followed the so-called "general rule" that there can be no contribution or indemnity between joint tortfeasors. (See, e.g., *Adams* v. *White Bus Line* (1921) 184 Cal. 710, 712-713 [195 P. 389].) The rule, attributed to *Merryweather* v. *Nixan* (1799) 8 T.R. 186[1] is said to be based on the theory that as joint tortfeasors the act of one was the act of the other and the individual seeking indemnity was seeking recovery for what was, in the eyes of the law, entirely his own wrong. (Prosser, *Joint Torts and Several Liability* (1937) 25 Cal.L.Rev. 413, 426 [hereinafter *Joint Torts*].)

As Dean Prosser observed, "There is an obvious lack of sense and justice in a rule which permits the entire burden of an accident, for which two defendants were equally, unintentionally to blame, to be shouldered onto one alone, according to the accident of a successful levy of execution, the plaintiff's spite, or his collusion with the other wrongdoer." (Prosser, *Joint Torts, supra,* at p. 427.) The obvious injustice of requiring one tortfeasor to bear the entire burden of the judgment while another escaped with impunity led to the carving out of equitable exceptions to the "general rule." Indemnity came to be available in three broad categories: where a court had imposed liability without fault, where one tortfeasor's fault was negligible, and where one wrongdoer was less at fault than the others. (Werner, *Contribution and Indemnity in California* (1969) 57 Cal.L.Rev. 490, 494.)

*City and County of S. F.* v. *Ho Sing* (1958) 51 Cal.2d 127 [330 P.2d 802] was the first California case to recognize an equitable right of indemnity between tortfeasors. The city had been compelled to pay a pedestrian for injuries received when she fell over a defective skylight in a sidewalk in front of defendant's premises. The court emphasized the point that the city and Ho Sing were jointly and severally liable for the pedestrian's injuries (*id.,* at pp. 130, 138), but determined to follow the doctrine of equitable indemnity which had been applied in numerous other jurisdictions under similar circumstances. (*Id.,* at pp. 131-133.)

The introduction of equitable indemnity into California law also introduced the problems associated with that doctrine. As a result of the rule prohibiting contribution among tortfeasors, equitable indemnity developed as an all-or-nothing proposition shifting the entire loss from one tortfeasor to another. (Werner, *supra,* at p. 494.) Consequently, courts struggled to formulate a test

---

[1](See Reath, *Contribution Between Persons Jointly Charged for Negligence* (1898) 12 Harv.L.Rev. 176, 177, 182-183.)

for determining when a judge could do what was unjust for a party to do: place the entire loss on one tortfeasor and completely absolve the other. The result was a "conflicting tangle of tests and rules that make it difficult to isolate the criteria and values which underly [sic] the decisions." (Comment, *The Allocation of Loss Among Joint Tortfeasors* (1968) 41 So.Cal.L.Rev. 728, 738, and see *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 267 Cal.App.2d 881, 886 [73 Cal.Rptr. 660]; Prosser, Law of Torts (4th ed. 1971) p. 313.) Change was called for by courts and commentators. (See, e.g., *Ford Motor Co.* v. *Robert J. Poeschl, Inc.* (1971) 21 Cal.App.3d 694, 699 [98 Cal.Rptr. 702]; Werner, *supra,* at pp. 513-517.)

Change came in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] [hereinafter *AMA*]. Rather than attempt another formulation for determining when liability should be shifted from one tortfeasor to another, the court went to the root of the problem and eliminated the all-or-nothing aspect of the doctrine. In its place the court adopted a rule permitting partial indemnity among joint tortfeasors on a comparative fault basis. (*Id.,* at pp. 595, 598.)

In *AMA,* a teen-age boy was injured while participating in a motorcycle race sponsored in part by the American Motorcycle Association. The boy alleged that the injuries were caused by the association's negligence in designing and supervising the race. (20 Cal.3d at p. 584.) The association answered the complaint and thereafter sought leave to file a cross-complaint against the boy's parents for indemnity on the theory that in permitting the boy's entry in the race his parents negligently failed to exercise their power of supervision of their minor child. (*Id.,* at p. 585.)

The facts in *AMA* fit the classic model of an indemnity suit between jointly and severally liable tortfeasors. When independent negligent actions of two tortfeasors (American Motorcycle Association and the parents) are each a proximate cause of a single injury (a crushing of the boy's spine) each tortfeasor is personally liable for the damage sustained. (20 Cal.3d at p. 587; Rest.2d Torts, § 879.)

The *AMA* opinion explained that the court's earlier decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] did not eliminate the joint and several liability doctrine. "[E]ach tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury." (20 Cal.3d at 582.) But, as to equitable indemnity, the court stated, "In light of *Li,* . . . we think that the long-recognized common law equitable indemnity doctrine should be modified to permit, in appropriate cases, a right of

partial indemnity, under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." (*Id.*, at p. 583.)

With this background in mind, we turn to the indemnification claim of attorney Munoz.

### ■ AN ATTORNEY WHO NEGLIGENTLY FAILS TO FILE A PERSONAL INJURY ACTION WITHIN THE STATUTE OF LIMITATIONS HAS NO CAUSE OF ACTION FOR EQUITABLE INDEMNIFICATION FROM THE PERSON WHOSE NEGLIGENCE CAUSED THE PERSONAL INJURY

1. There is no right of indemnity between the negligent lawyer and the negligent driver because they are not jointly and severally liable to the plaintiff.

Whatever confusion may have existed in the case law of equitable indemnity (see discussion *ante*), one point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity. (*Columbus Line, Inc. v. Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622, 628 [174 Cal.Rptr. 527].) Unless it appears that Davis and Munoz are jointly and severally liable to Rodriguez for Munoz' negligence in failing to file a complaint within the statute of limitations there is no basis for an apportionment of damages from that injury.[2]

Munoz contends that Davis is jointly and severally liable with him for Munoz' negligence in failing to file the personal injury action. He bases this argument on a line of cases holding the party whose negligence originally caused a physical injury liable for the subsequent negligence of a doctor who aggravates that physical injury. In *Ash v. Mortensen* (1944) 24 Cal.2d 654, 657 [150 P.2d 876], the court stated, "It is [well] settled that where [the plaintiff] . . . has suffered personal injuries by reason of the tortious act of another . . . and his injuries are aggravated by the negligence of [a] doctor, the law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment and holds him liable therefor." (Citations omitted.) Munoz argues that but for Davis' negligence Munoz would never have had the opportunity to commit malpractice in representing Rodriguez and, if a negligent driver can reasonably foresee that his victim will receive negligent medical treatment he can also foresee the victim receiving negligent legal representation.

---

[2]It is necessary to assume for the following discussion that Davis is liable for Rodriguez' personal injuries and Munoz is liable for Rodriguez' loss of action. We recognize that neither of these issues has been adjudicated.

This argument assumes that Davis owed a duty to Rodriguez to insure that his legal claims were being competently prosecuted. We find no basis for imposing such a duty.

Analysis of liability for negligence in terms of duty is essentially a question of "whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." (Prosser, Law of Torts, *supra,* at p. 244.) "The threshold determination that a duty is owed the plaintiff is a question of law within the exclusive province of the court." (*Kane* v. *Hartford Accident & Indemnity Co.* (1979) 98 Cal.App.3d 350, 355 [159 Cal.Rptr. 446].)

The policy question in the case at bar is the propriety of imposing liability on Davis for the negligence of his victim's attorney. Put another way, should the court turn negligent drivers into a new class of attorney malpractice insurers? For the reasons set forth below, the answer is, no.

Any number of considerations may affect the decision whether to impose a duty,[3] however, foreseeability of the risk is a primary consideration. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) Therefore, we focus first on the nexus between Davis' conduct and Rodriguez' loss of a right of action. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 807 [157 Cal.Rptr. 407, 598 P.2d 60].)

The critical factor of foreseeability distinguishes the line of cases represented by *Ash* v. *Mortensen, supra,* 24 Cal.2d 654[4] from the case at bar. In those cases the defendant's careless driving exposed the plaintiff to a risk of physical harm. Medical treatment for the resulting injuries is a kind of physical harm for which the defendant is liable whether or not the treatment is itself negligent. (*Hastie* v. *Handeland* (1969) 274 Cal.App.2d 599, 605-606 [79 Cal.Rptr. 268]; Prosser,

---

[3]Among these are "[t]he social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; . . . and finally, the moral imperatives which judges share with their fellow citizens . . . ." (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847].)

[4](See also, *Blackwell* v. *American Film Co.* (1922) 189 Cal. 689 [209 P. 999]; *Dewhirst* v. *Leopold* (1924) 194 Cal. 424, 433 [229 P. 30] and, more recently, *Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.2d 51, 59 [148 Cal.Rptr. 596, 583 P.2d 12]; *Helling* v. *Lew* (1972) 28 Cal.App.3d 434, 439 [104 Cal.Rptr. 789]; *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230, 239 [116 Cal.Rptr. 733].)

We have found no case which has extended the *Ash* v. *Mortensen* rationale to make the original tortfeasor liable for subsequent nonphysical injuries to the plaintiff. (See discussion *post* at p. 430.)

Law of Torts, *supra,* at p. 279, fn. 60, Rest.2d Torts, § 457.) The important factor in those cases is that the medical treatment is closely and reasonably associated with the immediate consequences of the defendant's act and forms a normal part of its aftermath. (See Prosser, Law of Torts, *supra,* at p. 276.)

The nexus between Davis' conduct and the risk of the injury that ultimately occurred to Rodriguez is too tenuous to support the imposition of a duty on Davis. The attorney who fails to protect his client's right to sue for personal injury damages neither extends the client's pain and suffering nor "aggravates" his bodily injuries. (Cf. *Ash* v. *Mortensen, supra,* 24 Cal.2d at p. 657.) The injury sustained by Rodriguez as a result of Munoz' negligence—loss of a right of action—is entirely distinct from the injury that was the immediate consequence of Davis' negligence—physical injuries—and does not form a normal part of the aftermath of careless driving. (Cf. *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 637 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Schrimsher* v. *Bryson* (1976) 58 Cal.App.3d 660, 663-664 [130 Cal.Rptr. 125]; *Zalta* v. *Billips* (1978) 81 Cal.App.3d 183, 191 [144 Cal.Rptr. 888].)

Another factor, particularly relevant in this case, is the workability of a duty of care especially in terms of the parties' relative ability to adopt practical means of preventing injury. (See *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d at p. 8.) The right of control goes to the very heart of the issue because "the imposition of a duty implies significant control over the agency of harm." (Mosk, J., dis. in *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 874 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].) In order to protect himself from liability the negligent motorist would have to sit at the very elbow of his adversary's counsel and have unrestrained access to their communications, the attorney's work product and to the adversary himself.

For the reasons given above we hold that a negligent driver is not liable for the subsequent malpractice of his victim's attorney in prosecuting a claim arising from the driver's negligence. That being the case, no basis for equitable indemnity exists between the driver and the attorney because they are not jointly and severally liable for the same injury.

2. There is no equitable basis for shifting malpractice liability from the negligent lawyer to the tortfeasor whose actions caused the client's original injuries.

Munoz argues that under the *AMA* decision equitable indemnity will always lie between joint tortfeasors and that the only issue is the proportion of liability each is to bear. We disagree.

In *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 756-757 [163 Cal.Rptr. 585, 608 P.2d 673], the court explained its *AMA* decision as follows: ". . . *American Motorcycle* did not establish a new cause of action separate and distinct from the traditional equitable indemnity action, but simply modified the all-or-nothing aspect of the pre-*American Motorcycle* doctrine to permit partial indemnification *in appropriate cases*." (Italics added.)

The *AMA* decision relied heavily on *Dole* v. *Dow Chemical Company* (1972) 30 N.Y.2d 143 [331 N.Y.S.2d 382, 282 N.E.2d 288, 53 A.L.R.3d 175] which abolished New York's all-or-nothing indemnity doctrine in favor of partial indemnification on the basis of comparative fault. The *Dole* opinion recognized that the new doctrine of partial indemnification would not result in an apportionment of liability in every case. " 'There are situations when the facts would in fairness warrant . . . passing on to [a concurrent tortfeasor] all responsibility that may be imposed on [the named defendant] for negligence, a traditional full indemnification. There are circumstances where the facts would not, by the same test of fairness, warrant passing on to a third party any of the liability imposed. There are circumstances which would justify apportionment of responsibility between third-party plaintiff and third-party defendant, in effect a partial indemnification.' (331 N.Y.S.2d at p. 386.)" (Quoted in *AMA, supra,* 20 Cal.3d at p. 597.)

In the *AMA* opinion itself the court recognized that there will be situations where the new partial indemnification doctrine will not result in any apportioning of liability (20 Cal.3d at p. 607 and fn. 9.) *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1, 9 [155 Cal.Rptr. 552] and *Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12, 21-23 [183 Cal.Rptr. 609] are examples of post-*AMA* decisions where no apportionment of liability was allowed.

Munoz' argument fails to consider the key ingredient in equitable indemnity: equity. Where that element is missing, the complaint fails to state a cause of action and the question of how to apportion liability never arises.

In the instant case an attorney whose subsequent negligence relieved the original tortfeasor of liability is seeking to have the tortfeasor share the attorney's liability for malpractice. Although this is a case of first impression an analogy can be drawn to cases involving indemnity from subsequent tortfeasors to the original tortfeasor. The leading case is *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].

In the *Herrero* case, Alice Lorenzo was injured by an automobile driven by Herrero. About 18 months after the accident, Lorenzo underwent an operation made necessary by the accident. She died in surgery. Her estate sued Herrero

and the doctors. Herrero cross-complained against the doctors for indemnity alleging that his liability for wrongful death attached only by reason of the doctors' negligence in performing the surgery. (See *Ash* v. *Mortensen, supra,* 24 Cal.2d 654.) The appellate court held that Herrero's cross-complaint stated a cause of action for equitable indemnity. The court pointed out that Herrero played no part in selecting the doctors, had no control over the conduct of the surgery and had no opportunity to protect himself against the doctors' negligence. (227 Cal.App.2d at p. 75.) Under these facts the court could find no reason why the ultimate burden of damages should not be distributed between Herrero and the doctors and each "made to bear that portion of the judgment which in equity and good conscience should be borne by him." (*Ibid.*) In holding that Herrero was entitled to have the doctors bear the burden of their own negligence, the court was applying a long-recognized principle "that everyone is responsible for the consequences of his own wrong. . . ." (*Id.,* at p. 74, and see Prosser, Joint Torts, *supra,* at pp. 427-428, Rest.2d Torts, § 879, com. b.)

Applying the *Herrero* analysis to the case at bar, we conclude that if Davis and Munoz were jointly and severally liable for Rodriguez' injuries equitable indemnity would have to be applied in favor of Davis and against Munoz rather than the other way around. Davis played no role in selecting Munoz as Rodriguez' attorney. Davis had no control over Munoz' actions nor any opportunity to protect himself against Munoz' negligent conduct. To award Munoz partial indemnity from Davis would be to stand the *Herrero* case on its head. We have found no case which allowed the subsequent tortfeasor to be indemnified by the initial tortfeasor. This is not surprising since the subsequent tortfeasor is not held liable as a matter of law for the injury caused by the initial tortfeasor but only for the injury caused by his own dereliction in aggravating or contributing to the original injury. (Rest.2d Torts, § 879 at p. 324, *Ash* v. *Mortensen, supra,* 24 Cal.2d at p. 657.)

In addition to the equitable considerations identified in *Herrero* there are strong public policy reasons for not permitting equitable indemnity in favor of a negligent lawyer from his client's adversary.[5] The effect of allowing a negligent attorney to recover indemnity from his client's adversary would be to judicially repeal the statutes of limitation, make every tortfeasor the guarantor of his victim's adequate compensation as well as the malpractice insurer of his victim's attorney and undermine the fiduciary duty of the nonnegligent attorney to his client.

---

[5]Public policy considerations were held to limit the *AMA* partial indemnity doctrine in *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347, 352 [156 Cal.Rptr. 326] (hg. den.); *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 944-945 [155 Cal.Rptr. 393] (hg. den.); *Goldfisher* v. *Superior Court, supra,* 133 Cal.App.3d at page 23.

In our case it is alleged that Munoz negligently failed to file a complaint on behalf of Rodriguez against Davis within the one-year statute of limitations, resulting in a loss of Rodriguez' compensation for personal injuries suffered at the hands of Davis. If Munoz' cross-complaint is permitted, then Davis loses the protection of the statute of limitations and must defend against the charge of negligence handicapped by the disappearance of witnesses, fading memories of the events, loss or destruction of physical evidence—all the impediments the statute of limitations was designed to avoid. (*Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304, 314 [89 L.Ed. 1628, 1635, 65 S.Ct. 1137].)

The ramifications of Munoz' claim go far beyond the facts of this particular case. Assume that Attorney Rufus Firefly filed a complaint for negligence against the Harmful Mfg. Co. after the statute of limitations had run. Should Harmful demur, settle or defend? If it demurs the demurrer will probably be sustained without leave to amend. It is likely that Firefly's client would sue Firefly for malpractice in which case Firefly would cross-complain against Harmful for equitable indemnification. If Harmful settles it pays on a claim for which it has been relieved of any obligation by the statute of limitations. If Harmful defends it gives up the protection the statute of limitations was designed to afford. The result is that through his negligence Firefly has actually obtained an advantage over the defendant. This would contravene the ancient maxim that one should not be allowed to take advantage of his own wrong. (See Civ. Code, § 3517.)

Assume further that Harmful elects to defend the action. At the trial Firefly's representation is so incompetent that the court, on its own motion, nonsuits the plaintiff. Again, a malpractice suit against Firefly can be anticipated with a cross-complaint by Firefly against Harmful for equitable indemnity. Of course, Harmful's attorney owes his client a zealous representation and the highest duty of care to protect his client's interests. (ABA Code of Prof. Responsibility, canon 7; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].) That duty is inconsistent with a duty to make sure his client's adversary's claim is timely filed, competently pursued and adequately compensated.

There is no suggestion in *AMA* that by adopting partial equitable indemnity the court intended to make every alleged tortfeasor into a malpractice insurer. No principle of equity or public policy supports that result. Yet, that would be precisely the result of allowing a claim for equitable indemnity under the circumstances of the instant case. The basis of the *AMA* decision was that the doctrine of equitable indemnity was not living up to its name; that the doctrine had in fact "precluded courts from reaching a just solution." (20 Cal.3d at p. 595.) But as between an original tortfeasor and a subsequently negligent attorney liability is already equitably apportioned by requiring the attorney to be responsible for his own wrongdoing.

OTHER ISSUES

Two other matters remain for disposition.

■ An order sustaining a demurrer is not appealable. The appeal must come from an order dismissing the complaint. (Code Civ. Proc., § 904.1, *Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 [23 Cal.Rptr. 189].) It does not appear from the record on appeal or from the superior court file, of which we take judicial notice, that a judgment or order of dismissal has been entered on Munoz' cross-complaint. Although he is aware of this defect, Davis has not sought dismissal of this appeal.[6] Rather, the case has been fully briefed and argued by both sides and to dismiss the appeal at this stage would be a waste of judicial and litigant resources. Therefore, in the interests of justice and to prevent unnecessary delay we will deem the order sustaining the demurrer to incorporate a judgment of dismissal and treat appellant's notice of appeal as applying to the dismissal. (*California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60].) Accordingly, the order sustaining the demurrer without leave to amend is modified by adding thereto the following sentence: "The cross-complaint is dismissed."

As an affirmative defense to the malpractice suit, Munoz contends that the statute of limitations is tolled by Insurance Code section 11583. Munoz also refers to this section in his cross-complaint for indemnification. We were advised during oral argument that Rodriguez, relying on section 11583, moved to amend his complaint to add a cause of action for personal injuries against Davis and that the trial court denied the motion without prejudice pending the outcome of this appeal. We deem the applicability of section 11583 irrelevant to Munoz' claim for equitable indemnification from Davis. We express no opinion as to its applicability in Rodriguez' claims against Munoz and Davis.

The order sustaining the demurrer without leave to amend and the dismissal of the cross-complaint are affirmed.

Schauer, P. J., and Thompson, J., concurred.

---

[6]Respondent's brief at page 3. We hoped that appellant would take the hint from respondent's brief and obtain a judgment of dismissal. He did not do so.