[Civ. No. 22968. Third Dist. May 9, 1985.]

CAROL N. BLECKER, Plaintiff and Respondent, v.
JOHN C. WOLBART, Defendant and Appellant.

**COUNSEL**

Wilke, Fleury, Hoffelt, Gould & Birney, Philip R. Birney and Bruce A. Kimzey for Defendant and Appellant.

Knox, Ricksen, Snook, Anthony & Robbins, Steven R. Anthony and Richard H. Carlson for Plaintiff and Respondent.

**OPINION**

**EVANS, J.**—This matter arises out of plaintiff's action for indemnification. Defendant contends the trial court erred in (1) refusing an instruction describing the liability of a tortfeasor for the subsequent medical negligence caused by a treating physician; (2) refusing to permit evidence of plaintiff's collision with decedent's motorcycle, thus precluding the jury from making a comparison of the parties' negligence; (3) finding plaintiff suffered an actual monetary loss; (4) refusing to allow defendant's expert to place facts

relating to decedent's prior cardiac arrest before the jury; and (5) awarding prejudgment interest. We conclude that for instructional error, the judgment must be reversed.

On March 23, 1978, plaintiff, while in the course and scope of her employment with California State Automobile Association (hereafter CSAA) and driving a vehicle owned by CSAA, collided with a motorcycle ridden by Lon Cole. Cole suffered a fractured forearm and a severe fracture of the right femur (thigh bone). Immediate emergency care was provided for the injury to his forearm, but surgery on his femur was postponed until Cole was deemed to be a good candidate for corrective surgery.

Defendant, an anesthesiologist, examined Cole the day before his surgery and concluded his condition would tolerate the surgery. Internal bleeding had decreased Cole's blood volume significantly, a condition which increases the risk of surgery because the body will be unable to supply sufficient oxygen to the organs.

Expert testimony presented at trial established defendant's negligence in his evaluation, anesthetisizing, and level of care extended Cole, including faulty placement of an endotracheal tube and his failure to adequately monitor Cole's vital signs; as a consequence, Cole suffered cardiac arrest on the operating table. Defendant also failed to take appropriate measures once Cole's heart had stopped. Cole lapsed into a coma, essentially brain dead, and died four days later.

Cole's heirs settled with CSAA for Cole's wrongful death. CSAA paid $260,476 to Cole's heirs and obtained a release of all claims for medical and funeral expenses. Following payment by CSAA, plaintiff brought the present action against defendant and five other medical defendants for indemnity. In a pretrial ruling, Judge Michael Virga determined plaintiff could proceed solely on a cause of action under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (hereafter *AMA*). Her cause of action for full indemnity was eliminated.[1]

---

[1] In his ruling on the matter, Judge Virga stated the issue to be decided was "whether the plaintiff is entitled to complete indemnification from the defendants under the principles enunciated in *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, and *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230, or whether the 'all or nothing approach' of these cases has been superseded by the comparative fault apportionment theory enunciated in the subsequently decided cases of *Li* v. *Yellow Cab Co*[.] (1975) 13 Cal.3d 804, *American Motorcycle Association* v. *Superior Court* (1978) 20 Cal.3d 578, and *City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869. [¶] Although no California case directly repudiates the 'all or nothing' approach of the *Herrero* and *Niles* cases, a fair reading of the *American Motorcycle, Gemsch,* and other cases, leads to the conclusion that the cases relied upon by plaintiff have been emasculated or overruled by inference."

Judge Virga misinterpreted the holdings of *Herrero* and *Niles. Herrero,* although it dis-

The trial court accepted two stipulations from plaintiff: (1) That she had been negligent in causing Cole's fractures, but was not a proximate cause of his death, and (2) that she had settled with Cole's heirs for $260,476. The court also precluded defendant from presenting evidence of the collision other than a description of the injuries suffered by Cole.

## I

Defendant contends the trial court erred in refusing his instruction based upon *Ash* v. *Mortensen* (1944) 24 Cal.2d 654 [150 P.2d 876]. ■ In *Ash*, the Supreme Court held "It is settled that where one who has suffered personal injuries by reason of the tortious act of another exercises due care in securing the services of a doctor and his injuries are aggravated by the negligence of such doctor, the law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment and holds him liable therefor. [Citations.]" (*Id.*, at p. 657.) The holding has been hailed as "a positive rule of decisional law of this state" (*Herrero* v. *Atkinson, supra,* 227 Cal.App.2d at p. 75), and is in accord with the Restatement Second of Torts section 457, and other leading experts in the field of tort law. (See Prosser & Keeton on Torts (5th ed. 1984) Intervening Causes, § 44, pp. 309-310.) Instead, the jury was instructed "In this case CAROL BLECKER has admitted that she was negligent and that her negligence was a proximate cause in bringing about an injury to Lon Cole but alleges that the immediate cause of the death was the negligence of Defendant, DR. JOHN WOLBART. *CAROL BLECKER is not relieved of such death if:* [¶] 1. *At the time of her conduct CAROL BLECKER realized, or reasonably should have realized, that Defendant DR. JOHN WOLBART might act as he did.*" (Italics added.)

The concept of partial indemnity among joint tortfeasors[2] was solidified and given a judicial stamp of approval in *AMA*. Prior to that decision, many

cussed equitable indemnity which at that time was an "all or nothing" rule, specifically stated there was no reason why the ultimate burden of damages should not be distributed among the various defendants, each bearing that portion which in fairness should be borne by him. (227 Cal.App.2d at p. 75.) In other words, *Herrero* was advocating what eventually became known as comparative indemnity. (See pt. I, *infra.*) *Niles* followed the holding in *Herrero*, holding liability must be apportioned as required by law, and upheld a special jury verdict apportioning the total damages awarded between the two defendants. (42 Cal.App.3d at pp. 239, 240.) Although *AMA* merely modified the traditional theory of equitable indemnification to allow for partial indemnity and did not eliminate the possibility of total indemnity by one party (see *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 756-757 [163 Cal.Rptr. 585, 608 P.2d 673]), the distinction becomes academic in factual situations such as the one before us for reasons discussed *infra*.

[2]Although *AMA* speaks to "concurrent tortfeasors," it has been noted the term "joint tortfeasor" is commonly used interchangeably with the term "concurrent tortfeasor," following a history of careless usage of the terms. (*Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 282 [188 Cal.Rptr. 580].) That case held the term

courts had attempted to formulate a test to deal with the harsh "all-or-nothing" rule of equitable indemnity. (*AMA, supra,* 20 Cal.3d at pp. 593-594.) In a holding which presaged the result in *AMA,* the court in *Herrero* v. *Atkinson, supra,* a case factually similar to the instant matter, held "[a]lthough the original negligence of Herrero [driver of the vehicle which collided with the decedent's vehicle] may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him." (227 Cal.App.2d at p. 75.)

We do not find the holding of *AMA,* allowing partial indemnity from a joint tortfeasor on a comparative fault basis, to be antagonistic to the holding in *Ash* v. *Mortensen, supra,* 24 Cal.2d 654. Nor did *AMA* overrule *Ash,* either explicitly or impliedly. (See *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400].) Plaintiff argues the rule of *Ash* is but a statement of legal policy which formulated a rule of proximate cause, and is limited to an action brought by the original plaintiff against the original tortfeasor. Aside from not citing any authority for the latter assertion, plaintiff misses the point. By allowing the jury to determine whether plaintiff realized or reasonably should have realized defendant might act as he did (i.e., foreseeability), the trial court ignored the ruling of *Ash* that subsequent negligent medical treatment is foreseeable as a matter of law. Indeed, the subsequent medical treatment need not even be negligent to hold the original tortfeasor liable.    In *Hastie* v. *Handeland* (1969) 274 Cal.App.2d 599 [79 Cal.Rptr. 268], a case again involving a vehicular collision and subsequent death of the victim following medical care, the court recognized the original tortfeasor is liable for subsequent injury suffered during medical treatment, citing *Ash* and *Herrero,* but went on to hold that liability is not limited to additional harm caused by negligence. (274 Cal.App.2d at pp. 604-605.) "If death resulted from a risk inherent in the medical treatment reasonably required to cure the injuries caused by the accident, respondents [original tortfeasors] would be liable irrespective of whether such treatment was rendered in a proper or a negligent manner. The question is one of causation, and where the additional harm results either from the negligence of doctors or hospitals who furnish necessary medical care, or from the materialization of a risk inherent to necessary medical care, the

---

"joint tortfeasor" as used in Code of Civil Procedure section 877.6 (settlements in good faith) refers to all tortfeasors joined in a single action, regardless of whether their acts were successive or contemporaneous. (*Id.,* at p. 283.) We also shall use the term "joint tortfeasors" to refer to both concurrent and successive tortfeasors.

chain of causation set in motion by the original tort remains unbroken. [Citations.]" (*Id.*, at p. 606.)

██ Plaintiff argues the question for the jury was whether her negligent driving combined as a matter of fact with the negligent medical care provided by defendant to cause Cole's death, relying upon *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230 [116 Cal.Rptr. 733]. In *Niles*, the court found there were two separate torts committed when a young boy fell on a publicly controlled playground and injured his head; he was later sent home from the defendant hospital despite warning signs of brain injury. The court found the public entity defendant to be liable under *Ash* (at p. 239) and went on to hold "[t]he rule of *Herrero* applies if there were separate and distinct negligent acts, the original tortfeasor had no control over the second negligent act, and the liability of the original tortfeasor for the second act is imputed by law. [Citation.]" (42 Cal.App.3d at pp. 239-240.)

More importantly, the *Niles* court found the jury had been properly instructed where they were told "the public entities were liable to the plaintiff for all damages flowing from the initial tort, *including damages caused by malpractice,* and that appellants were liable only for damages caused by their own neglect." (Italics added; 42 Cal.App.3d at p. 240.) Thus, the *Niles* jury was given an *Ash* instruction. By following *Herrero*, a trial court must give an *Ash* instruction, as the latter is built into the former.

It is clear from the transcripts of argument between counsel that both parties' counsel and the trial court were confused as to whether a jury could apportion the liability of successive tortfeasors, or whether *AMA* even applied to successive tortfeasors. The confusion seemed to revolve around the fact there were two separate and distinct injuries (broken bones and death) and two separate and distinct acts of negligence.

In *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326], the court discussed *AMA* as it applied to legal malpractice. That case involved successive tortfeasors. The court stated it did not believe the fact of successive torts would remove the case from the *AMA* ambit, stating "[o]ne difference is that *American Motorcycle* dealt with liability for a single indivisible injury—that is the bodily harm sustained by the minor plaintiff in a single occurrence. The present case involves successive acts, each of which had a discernible effect contributing to the ultimate loss. It is conceivable that in this situation the evidence might show that the harm resulting from the acts of one party could be identified and measured apart from the harm caused by other parties. We do not think this factual difference should militate against comparative indemnification. In medical malpractice cases, prior to *American Motorcycle,* partial indemni-

fication has been awarded in favor of the party who caused the first injury and against the physician whose subsequent negligence aggravated it. (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230 [116 Cal.Rptr. 733].) These cases support the availability of equitable indemnification, comparative or otherwise, as between parties who made separate contributions to the loss." (Pp. 351-352.)

In both *Hastie* v. *Handeland, supra,* 274 Cal.App.2d 599, and *Ash* v. *Mortensen, supra,* 24 Cal.2d 654, there were successive tortfeasors who inflicted completely separate injuries. In both, the injured party died, not from the original injury inflicted, but from the subsequent acts of medical personnel. Thus, it matters not whether the tortfeasors acted in concert to create a single injury, or successively, in creating distinct and divisible injury.

Plaintiff's statement that "[t]he jury found that respondent's negligence ceased to have any effect prior to the operation of appellant's negligence and therefore properly found respondent did nothing to cause Cole's death" is wrong. That issue was not for the jury to decide; it has been decided judicially. As stated in *Munoz* v. *Davis, supra,* "[t]he important factor in those cases [descending from *Ash*] is that the medical treatment is closely and reasonably associated with the immediate consequences of the defendant's act and *forms a normal part of its aftermath.*" (141 Cal.App.3d at p. 427; italics added.)

Although substantial evidence was presented which indicated defendant's negligence played a significant part in Cole's death, if not a total part, the rule in *Ash* establishes the plaintiff (original tortfeasor) is not relieved of liability. Defendant's acts, although negligent, were not so bizarre or removed from the spectrum of medical practices as to become unforeseeable as a matter of law. "It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg." (See Prosser & Keeton, *supra,* at p. 309.) A harmonizing of *AMA* and *Ash* compels the conclusion there may never be 100 percent comparative indemnity in factual situations such as the present one, as the original tortfeasor is always considered to be a proximate cause of the plaintiff's further injuries.

██ Defendant also contends the trial court erred in refusing to allow him to place before the jury evidence of plaintiff's negligent conduct resulting in the collision with Cole's motorcycle. He claimed the refusal resulted in the jury comparing the injuries caused by plaintiff with defendant's conduct, whereas the comparison should have been on the relation of plaintiff's conduct and the conduct of defendant. We agree.

"[U]nder the common law equitable indemnity doctrine a concurrent tortfeasor may obtain partial indemnity from tortfeasors *on a comparative fault basis.*" (*AMA, supra,* 20 Cal.3d at p. 608; italics added.) "[T]he equitable indemnity doctrine originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more *culpable* than the other, it is only fair that *the more culpable party* should bear a greater share of the loss." (*Id.,* at p. 593; italics added.)

Cases following *AMA* make it clear that the conduct of concurrent tortfeasors[3] must be considered by the jury in ascertaining fault (and therefore liability) even though "a jury cannot be expected to determine the precise relationship between fault and liability in applying the doctrine of comparative fault [citations] . . . ." (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 613 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061]; see, e.g., *Rodgers* v. *Workers' Comp. Appeals Bd.* (1984) 36 Cal.3d 330, 347 [204 Cal.Rptr. 403, 682 P.2d 1068]; *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 843 [150 Cal.Rptr. 888, 587 P.2d 684]; *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 332 [146 Cal.Rptr. 550, 579 P.2d 441].)

In the instant case, plaintiff did not "stipulate" with defendant about anything. She offered to "stipulate" that she was negligent but her conduct was not a proximate cause of the accident. Defendant did not accept her offer. The trial court treated her "stipulation" as a concession of liability as to negligence and precluded defendant from proving her conduct.

In doing so, the trial court erred. At issue in this proceeding is the comparative fault of plaintiff based on her conduct. Plaintiff's "stipulation" could not serve to remove that issue from the jury because she did not "stipulate" as to her *percentage of fault*—the very issue the jury was to determine. Moreover, unless plaintiff were to stipulate she was fully at fault for causing the death, any "stipulation" such as offered by plaintiff would have to be accepted by defendant. Plaintiff cannot remove from the jury's consideration her degree of fault by "stipulating" she was at fault to an unknown degree.

Upon retrial, absent an unlikely stipulation *between* the parties, defendant should be able to present proof of plaintiff's conduct in causing the accident that resulted in the hospitalization of the decedent.

---

[3]*Ash* v. *Mortensen, supra,* 24 Cal.2d 654, stands for the proposition that plaintiff's negligence in causing injury to the decedent is a proximate cause of death as a matter of law. It is not for this court to reject *Ash.* So long as *Ash* is good law, and in light of plaintiff's concession she was negligent in causing decedent's initial injuries, plaintiff is a concurrent tortfeasor as a matter of law.

## II

■ Next, defendant contends the trial court wrongly precluded his expert, Dr. Katz, from informing the jury of his opinion concerning Cole's death and its relationship to a prior history of drug abuse, beyond Cole's admission he had taken one or two amphetamines per day the week prior to his injury. Plaintiff made a motion *in limine* prior to commencement of trial, requesting defendant's witness be precluded from mentioning Cole's drug use or abuse. Defendant had prepared a postanesthetic resume shortly after Cole's surgery, in which he stated Mrs. Cole had informed him he had suffered a cardiac arrest after taking a drug overdose six years ago. The overdose was not voluntary. A medical record prepared by a psychiatrist who examined Cole in the hospital stated Cole admitted using amphetamines the week prior to the accident. In ruling on the motion, the court stated "With respect to the motion in limine concerning no mention or suggestion with respect to whether the decedent Cole had a past history or drug abuse or use, the Court finds, based on the offers of proof and the documents presented, that the Defendants have not established the facts sufficient to show that Defendant [*sic*] Cole was using or abusing drugs. [¶] . . . The three items that were relied on were medical records that are six years old. That showed, if anything, that it was a non-voluntary use, that, in other words, somebody slipped in some drugs in a drink or something. . . . Secondly, I think it's very remote in time. Thirdly, there is a statement that he was using amphetamines one week prior to being in the hospital."

Later, during trial, the court reconsidered the issue and determined Dr. Katz would be permitted to refer to Cole's use of amphetamines the week before the accident, but could not refer to a prior history of drug use. Dr. Katz testified before the jury that Cole's anesthetic reaction was due to amphetamine use. Defendant contends the court's ruling undermined Katz' credibility, and improperly excluded the fact of the prior drug incident from being a basis for Katz' opinion.

The test on appeal is whether or not a trial court abused its discretion in determining whether a proper foundation was laid for an expert's testimony. (*Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 339 [145 Cal.Rptr. 47].) We find no abuse here. Not only was the prior incident with amphetamines remote in time, but the proferred evidence indicated Cole had not voluntarily ingested the drugs which led to his cardiac arrest. The incident did not establish a history of drug abuse.

Moreover, defendant was not prejudiced in any manner by the court's ruling. During a second hearing out of the presence of the jury, defendant's counsel attempted to lay a foundation of preliminary facts for Katz' testi-

mony; Katz testified he based his opinion that the anesthetic course was due to amphetamine use, on the fact Cole had used amphetamines the week prior to the hospitalization and the incident six years previously. However, he went on to state that if he disregarded the prior incident, he would *still* conclude Cole's death was due to amphetamine use. Thus, Katz' credibility was in no way undermined by the court's ruling, as his opinion remained the same after evidence of the overdose was excised.

### III

In light of our conclusion that this matter must be reversed because of instructional error, we need not address defendant's argument on the sufficiency of the evidence upholding the court's finding that plaintiff suffered an actual loss, and that the trial court erred in awarding prejudgment interest. We do note, however, for purposes of guidance on retrial, interest at the rate of 10 percent pursuant to Civil Code section 3291 is not available to plaintiff, as the offer to compromise was made and rejected prior to the effective date of that statute. (*Gutierrez* v. *State Ranch Services* (1983) 150 Cal.App.3d 83 [198 Cal.Rptr. 16].)

The judgment is reversed.

Regan, Acting P. J., and Sims, J., concurred.

On May 28, 1985, the opinion was modified to read as printed above. A petition for a rehearing was denied June 4, 1985.