100 Cal.Rptr.2d 866 (2000)
84 Cal.App.4th 435
MARINA EMERGENCY MEDICAL GROUP et al., Petitioners,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Stuart Charno, Real Party in Interest.
No. B142473.
Court of Appeal, Second District, Division One.
October 26, 2000.
Rehearing Denied November 14, 2000.
As Modified November 30, 2000.
Review Denied February 21, 2001.[*]
*867 Cotkin, Collins & Ginsburg, William H. Ginsburg, Los Angeles, Terry L. Kesinger, Santa Ana, and Cooper W. Collins for Petitioners.
Law Offices of Sean M. Burke and Sean M. Burke, Long Beach, for Real Party in Interest.
No appearance for Respondent.
*868 MIRIAM A. VOGEL, J.
This is a tort action in which, allegedly, an emergency room doctor's negligence was aggravated by the subsequent negligence of the patient's personal physician. By the time of trial, the only parties were the patient (the plaintiff) and the emergency room doctor (the defendant). The patient claims (and the trial court agreed) that evidence of the personal physician's subsequent negligence is inadmissible. We hold that Proposition 51 and the rules of comparative indemnity compel a different result.

FACTS
Stuart Charno's lacerated thumb was sutured by Brigeli Westerband, M.D., an employee of Marina Emergency Medical Group, which provided emergency medical services at Daniel Freeman Marina Hospital. Two days later, Charno consulted his personal physician, Norman Solomon, M.D. About a month later, Dr. Solomon referred Charno to Michael McGuire, M.D., a board certified hand surgeon. Dr. McGuire operated on Charno's thumb, and in the process discovered two severed nerves and a partially severed tendon.
Charno sued Dr. Westerband, Marina Emergency, Dr. Solomon, and Daniel Freeman Marina Hospital for medical malpractice. Dr. Westerband answered, and discovery ensued. At his deposition, Dr. McGuire testified that based on the lapse of time between the injury and the surgery, Charno's range of motion was permanently limited. At some point, Dr. Solomon and Daniel Freeman Marina Hospital were voluntarily dismissed from Charno's action, leaving Dr. Westerband and Marina Emergency (which is included in our subsequent references to Dr. Westerband) as the only defendants.
Before trial, Charno moved to exclude all evidence about Dr. Solomon's subsequent negligence, contending that Dr. Westerband's only remedy would be a separate action for indemnity against Dr. Solomon. The trial court agreed with Charno, rejected Dr. Westerband's opposition, and granted the motion. Dr. Westerband then filed a petition for a writ of mandate in which she asked us to intervene. We stayed trial, issued an order to show cause, and set the matter for hearing.

DISCUSSION
This is Charno's syllogism: Since Dr. Westerband's negligence was the cause of the original injury, Dr. Westerband is liable to Charno for any aggravation caused by Dr. Solomon's subsequent medical treatment. Since Dr. Westerband is the one who is liable to Charno, she is not entitled to tell the jury about Dr. Solomon's negligence; her only remedy is a subsequent action for indemnity against Dr. Solomon. This is a false syllogism.

A.
In American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578, 582, 146 Cal.Rptr. 182, 578 P.2d 899, our Supreme Court held that its then recent adoption of comparative negligence "to ameliorate the inequitable consequences of the contributory negligence rule d[id] not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury." So that liability for an indivisible injury would be borne by each tortfeasor in direct proportion to his respective fault, the Supreme Court modified the rules of equitable indemnity to permit a joint tortfeasor to obtain partial indemnity from other tortfeasors on a comparative fault basisby way of a cross-complaint in the plaintiffs action or in a subsequent (and separate) indemnity action. (Id. at pp. 591-598, 604-607, 146 Cal.Rptr. 182, 578 P.2d 899.)
By the time American Motorcycle Assn. was decided, it had long been settled that a tortfeasor who caused personal injuries was liable to the injured party not only for the original injury but also for any aggravation *869 caused by a physician or surgeon whose services were secured by the injured party with reasonable care. (Dewhirst v. Leopold (1924) 194 Cal. 424, 432-433, 229 P. 30; see also Maxwell v. Powers (1994) 22 Cal.App.4th 1596, 1607-1609, 28 Cal.Rptr.2d 62 [the rule is the same when the original tort is medical malpractice].)[1]American Motorcycle Assn. did not change these rules. (Blecker v. Wolbart (1985) 167 Cal.App.3d 1195, 1201, 1203, 213 Cal.Rptr. 781 [under American Motorcycle Assn., "it matters not whether the tortfeasors acted in concert to create a single injury, or successively, in creating distinct and divisible injury"].) But in 1986, Proposition 51 (Civ.Code, § 1431 et seq.) did modify the doctrine of joint and several liability by limiting an individual tortfeasor's liability for noneconomic damages, so that noneconomic damages are now allocated to each defendant in direct proportion to that defendant's percentage of fault. (See Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1192, 246 Cal.Rptr. 629, 753 P.2d 585.)[2]

B.
Charno contends Dr. Westerband's "sole remedy is a subsequent indemnity action," and that the jury in this tort action can neither hear evidence about Dr. Solomon's aggravating negligence nor be asked to allocate fault between Dr. Westerband and Dr. Solomon. This is so, according to Charno, because Dr. Westerband is liable to Charno for Dr. Solomon's subsequent medical negligenceand in spite of the fact that this is "strictly a non-economic damage case" in which Charno does not intend to present any evidence of any economic loss. Charno is wrong.
The case relied on by Charno and the trial courtMaxwell v. Powers, supra, 22 Cal.App.4th 1596, 28 Cal.Rptr.2d 62does not support Charno's position. It holds only that the original tortfeasor is liable for the subsequent tortfeasor's aggravating medical negligence, and that the jury is to be instructed accordingly, no more and no less. (Id. at p. 1606, 28 Cal.Rptr.2d 62.) It does not hold that evidence of the subsequent tortfeasor's negligence is inadmissible, or that the jury cannot be asked to allocate fault between the original and subsequent tortfeasors. It does not consider Proposition 51 or the effect of section 1431.2, subdivision (a), on this issue. It does not address any of these points. (Canales v. City of Alviso (1970) 3 Cal.3d 118, 128, fn. 2, 89 Cal.Rptr. 601, 474 P.2d 417 [a case is not authority for a proposition that has not been considered].)
Charno's novel approach to this case ignores Dr. Westerband's options. She could have but was not obligated to pursue a cross-complaint for equitable indemnity in Charno's tort action. (American Motorcycle Assn. v. Superior Court, supra, 20 Cal.3d at pp. 604-607, 146 Cal. Rptr. 182, 578 P.2d 899; Evangelatos v. Superior Court, supra, 44 Cal.3d at pp. 1197-1198, 246 Cal.Rptr. 629, 753 P.2d 585.) She was equally entitled to do what she tried to doto have the jury in this action allocate fault between the two doctors so that the liability for noneconomic damages to be borne by each will be in direct proportion to his or her fault. (§ 1431.2, subd. (a).) But if Charno's damages are in fact all noneconomic, Dr. Westerband cannot later seek indemnity from Dr. Solomonbecause Dr. Westerband's *870 liability to Charno for noneconomic damages must necessarily be based on her own negligence. (Union Pacific Corp. v. Wengert (2000) 79 Cal.App.4th 1444, 1448, 95 Cal.Rptr.2d 68; see also Aetna Health Plans of Cal., Inc. v. Yucaipa-Calimesa Joint Unified School Dist. (1999) 72 Cal. App.4th 1175, 85 Cal.Rptr.2d 672 [as to noneconomic damages, "the plaintiff must sue all tortfeasors to enable a full recovery" and a failure "to name a defendant will preclude recovery of that defendant's proportional share" of noneconomic damages].)
Charno contends there are exceptions to the rules adopted by Proposition 51. He is right. He says there ought to be one here. He is wrong. In cases where a person's liability is derivative (such as the respondeat superior liability of an employer for an employee's acts) or based solely on statute (such as an automobile owner's liability for the driver's negligence), Proposition 51 does not apply (other than as it might require an allocation of liability between the employee and third persons or the driver and third persons). (Miller v. Stouffer (1992) 9 Cal. App.4th 70, 81-85, 11 Cal.Rptr.2d 454; Rashtian v. BRAC-BH, Inc. (1992) 9 Cal. App.4th 1847, 1851, 12 Cal.Rptr.2d 411; see also Srithong v. Total Investment Co. (1994) 23 Cal.App.4th 721, 727, 28 Cal. Rptr.2d 672 [Proposition 51 does not apply when a defendant's liability is not based on any wrongdoing].)
But Dr. Westerband's liability for Dr. Solomon's subsequent negligence is not derivative. It is not a creature of statute. It is based on Dr. Westerband's own negligence, and it exists because "the law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment and holds [the original tortfeasor] liable therefor." (Ash v. Mortensen, supra, 24 Cal.2d at p. 657,150 P.2d 876.) The rationale for the rule is that the subsequent medical treatment "is closely and reasonably associated with the immediate consequences of the [original tortfeasor's] act and forms a normal part of its aftermath." (Munoz v. Davis (1983) 141 Cal.App.3d 420, 427, 190 Cal.Rptr. 400; see also Blecker v. Wolbart, supra, 167 Cal.App.3d 1195, 1201, 213 Cal.Rptr. 781.) Indeed, even where public policy precludes an indemnity claim against a subsequent tortfeasorfor example, a lawyer sued for malpractice by a former client may not cross-complain for indemnity against a successor lawyer hired to extricate the client from the condition created by the predecessor lawyerthe original tortfeasor may, by affirmative defense in the plaintiffs case, reduce his liability for noneconomic damages to the extent of the subsequent tortfeasor's fault. (Shaffery v. Wilson, Elser, Moskowitz, Edelman & Dicker (2000) 82 Cal.App.4th 768, 773, 98 Cal.Rptr.2d 419.) It follows that Dr. Westerband is entitled to have Charno's damages apportioned among the universe of tortfeasors, "including nonjoined defendants." (Roslan v. Permea, Inc. (1993) 17 Cal.App.4th 110, 113, 21 Cal.Rptr.2d 66.)[3]

C.
Dr. Westerband must be given the opportunity to prove Dr. Solomon's comparative fault, and to have the jury allocate fault between the two doctors. If the jury finds Dr. Westerband liable to Charno, she will be jointly and severally liable for all of Charno's economic damages (if there are any), but only severally liable for her allocated share of his noneconomic damages. There simply isn't any authority to the contrary, and certainly none that would support Charno's effort to create a medical malpractice exception to Proposition 51.

*871 DISPOSITION
The petition is granted, and a writ will issue to command the trial court to vacate the order under review. Dr. Westerband is awarded her costs of these writ proceedings.
ORTEGA, Acting P.J., and MALLANO, J., concur.
NOTES
[*] Mosk, J., dissented.
[1] BAJI No. 14.66 puts the rule this way: "If you find that the defendant is liable for the original injury ... to the plaintiff, [the] defendant is also liable ... [f]or any aggravation of the original injury or additional injury caused by negligent medical or hospital treatment or care of the original injury." Ash v. Monensen (1944) 24 Cal.2d 654, 657, 150 P.2d 876 explains the corollary to this rule: "But the fact that plaintiff could have obtained full compensation for all damages in [an] action against ... the original wrongdoer[] does not establish that she has been so compensated [and (he plaintiff is] at liberty to sue [the original wrongdoer] for damages resulting from the original injury alone, and to sue [the subsequent wrongdoer] for damages resulting from the additional injury or aggravation
[2] All section references are to the Civil Code.
[3] Charno's reliance on Kitzig v. Nordquist (2000) 81 Cal.App.4th 1384, 97 Cal.Rptr.2d 762, is misplaced. Kitzig, an action in which the only defendant was the subsequent (and not the original) tortfeasor, holds only that a subsequent tortfeasor cannot use Proposition 51 to reduce his own liability for the severable damages he has caused. (Id. at p. 1398, 97 Cal.Rptr.2d 762.)