[No. B200690. Second Dist., Div. Seven. Feb. 25, 2008.]

JOE HENRY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LARRY REININK et al., Real Parties in Interest.

444

## Counsel

Horvitz & Levy, David M. Axelrad, Karen M. Bray; The Phillips Firm, Thomas M. Phillips, Timothy E. Kearns and Hillary Arlene Jones for Petitioners.

No appearance for Respondent.

Law Office of Gerald Philip Peters and Gerald P. Peters for Real Parties in Interest.

Steven G. Ingram for Consumer Attorneys of California as Amicus Curiae on behalf of Real Parties in Interest.

## Opinion

**PERLUSS, P. J.**—Traditional California tort law holds a tortfeasor liable not only for the victim's original personal injuries but also for any aggravation caused by subsequent negligent medical treatment, provided the injured party exercised reasonable care in obtaining the medical treatment. The subsequent tortfeasor, in turn, is also liable to the injured party for the enhanced injuries he or she has caused. Does Civil Code section 1431.2,[1] adopted by the voters

---

[1] Statutory references are to the Civil Code.

in 1986 as Proposition 51 (The Fair Responsibility Act of 1986), which provides in personal injury actions based upon principles of comparative fault "the liability of each defendant for non-economic damages shall be several only and shall not be joint," modify the injured party's right to recovery in these cases? That is, in a lawsuit brought by the injured party against the original tortfeasor alone, is the defendant entitled to reduce his or her exposure to noneconomic damages by proving the medical professionals share fault for the aggravated injuries suffered by the plaintiff?

The trial court in this premises liability action ruled homeowners Joe and Judy Henry, sued by Larry Reinink for injuries suffered as a result of a fall on their property, could not introduce evidence that medical malpractice by emergency room doctors at Kaiser Permanente (Kaiser), who are not parties to this action, aggravated Reinink's injuries. Because section 1431.2 generally precludes joint liability for noneconomic damages in personal injury actions, providing a defendant shall be liable only for those noneconomic damages directly attributable to his or her own percentage of fault, and because none of the limited exceptions to section 1431.2 is applicable in this case, we grant the petition for writ of mandate filed by the Henrys and direct respondent Los Angeles Superior Court to vacate its order excluding evidence of subsequent negligence by Kaiser physicians treating Reinink's injuries and to enter a new order permitting such evidence if it is otherwise admissible.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Reinink's Fall at the Henrys' Residence; the Reininks' Complaint and the Henrys' Answer*

Reinink was hired by the Henrys to clean and repair their swimming pool and its equipment. On April 3, 2003 Reinink worked at the Henrys' property from midafternoon until it began to get dark. As he was leaving, Reinink fell over what he believed was an unmarked, unlit concrete step along the walkway between the pool and an access gate at the south end of the property, injuring his shoulder. Paramedics transported Reinink to the emergency room at Kaiser where doctors treated him. Thereafter, Reinink underwent a series of surgeries to further treat his injury.

On June 26, 2003 the Reininks filed a Judicial Council form complaint for personal injuries (negligence/premises liability) against the Henrys, alleging "an unmarked, unexpected and unlit dropoff on the cement walkway" constituted a dangerous condition and the Henrys had breached their duty to correct the condition or warn Reinink about it. Sandra Reinink also asserted a claim for loss of consortium. In their answer to the complaint the Henrys alleged as an affirmative defense that the fault of others contributed to Reinink's injuries

and their liability for noneconomic damages should therefore be allocated in direct proportion to their own percentage of fault.

### 2. *The Trial Court's Order Excluding Evidence Kaiser's Negligence Contributed to Reinink's Injuries*

Trial in the matter was scheduled to begin on July 9, 2007.[2] On June 28, 2007 the Henrys filed proposed jury instructions and a statement of the case to be read to the jury, describing the case as involving a trip and fall.[3] On July 9, 2007 the Henrys filed an amended statement of the case that added the contention "[Reinink's health care] providers were negligent in the treatment of the plaintiff." According to the Henrys, Reinink's shoulder had only been dislocated with a minor fracture when he fell. Physicians at Kaiser, however, had aggravated that injury and committed malpractice when they broke Reinink's shoulder in four places while trying to put it back into place, necessitating the surgeries. The Henrys also filed new proposed jury instructions regarding medical malpractice.

The Reininks objected to expanding the scope of the trial to include Kaiser's alleged negligence in treating Reinink's injury because, among other reasons, they had not named Kaiser as a defendant in their lawsuit and the Henrys had not sought to include Kaiser by way of cross-complaint. Relying on *Marina Emergency Medical Group v. Superior Court* (2000) 84 Cal.App.4th 435, 439–441 [100 Cal.Rptr.2d 866] (*Marina*), in which Division One of this court held an emergency room physician in a medical malpractice action was entitled under section 1431.2 to introduce evidence of the plaintiff's personal physician's subsequent negligence in treating the plaintiff even though the personal physician had been voluntarily dismissed from the case, the Henrys argued they were entitled to introduce evidence of Kaiser's negligence because their liability for the Reininks' noneconomic damages was limited to their proportionate share of fault in causing the injuries. The trial court disagreed, concluding *Marina* was limited to medical malpractice actions in which one physician is seeking to allocate fault to a subsequent treating physician. The court stated, "I just read the case, and I do not believe that you are allowed to [introduce evidence of Kaiser's negligence] after reading the case because they were all medical malpractice cases, and one

---

[2] Earlier in the proceedings the trial court had granted the Henrys' motion for summary judgment, finding, as a matter of law, the step was not a dangerous condition. We reversed on the ground there were triable issues of fact whether the Henrys' walkway, at dusk, was unreasonably unsafe without lighting or markings. (*Reinink v. Henry* (Nov. 1, 2006, B185422) [nonpub. opn.].)

[3] The Henrys proposed the jury be told, "This case involves an April 3, 2003 trip and fall incident by plaintiff Larry Reinink at the home of defendants Joe and Judy Henry. [Reinink] alleges that [the Henrys] negligently maintained their property and is seeking to recover monetary damages for injuries sustained. [The Henrys] deny responsibility for [Reinink's] fall and dispute the nature and extent of [Reinink's] injuries and damages."

would take liability against the other. This is not a medical malpractice case, and we are not going to try the issue whether or not there was medical malpractice. They're not parties to this case, and it would take up so much time that it's not worthwhile doing it."

On July 11, 2007, during further proceedings before the trial court on motions in limine, the Henrys requested the court revisit its decision precluding them from introducing evidence of Kaiser's negligence. After extensive argument the court reaffirmed its previous ruling: "It's still my opinion that the premises liability defendants still can't give the comparative fault of a malpracticing [sic] physician as a defense or an apportionment of the wrongdoing. . . . It's a completely different class of negligence. And as plaintiff's counsel said, it's comparing apples versus oranges." The court continued the trial date to permit the Henrys to seek writ relief from this court.

### 3. *The Writ Petition*

On July 20, 2007 the Henrys petitioned this court for a writ of mandate compelling the trial court to vacate its order precluding them from presenting evidence of Kaiser's negligence and to enter a new order permitting them to do so. The Henrys also sought an immediate stay of the trial court proceedings. On July 23, 2007 we issued an order to show cause why the requested relief should not be granted and stayed all trial court proceedings.

### CONTENTION

The Henrys contend they are entitled under section 1431.2 to introduce evidence of Kaiser's negligence to limit their liability for noneconomic damages to their percentage of fault.[4]

### DISCUSSION

### 1. *Proposition 51 Limits Liability for Noneconomic Damages to Several Only When Liability Is Based upon Comparative Fault*

■ The basic rules governing comparative responsibility and apportionment of liability among multiple tortfeasors are not seriously disputed by the

---

[4] In addition to arguing as a matter of law the Henrys are not entitled to limit their liability for noneconomic damages under section 1431.2 based on Kaiser's negligent treatment of Reinink, in their answer to the petition for writ of mandate the Reininks raise a host of procedural and evidentiary challenges to the Henrys' proposed evidence of medical malpractice. Those issues are all properly addressed by the trial court in the first instance.

parties. "Under well-established common law principles, a negligent tortfeasor is generally liable for all damage of which his negligence is *a* proximate cause . . . . A tortfeasor may not escape this responsibility simply because another act—either an 'innocent' occurrence such as an 'act of God' or other negligent conduct—may also have been a cause of the injury." (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 586 [146 Cal.Rptr. 182, 578 P.2d 899] (*American Motorcycle*); see *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985, 993 [60 Cal.Rptr.2d 103, 928 P.2d 1181].)

"In cases involving multiple tortfeasors, [this] principle . . . has commonly been expressed in terms of 'joint and several liability.' " (*American Motorcycle, supra*, 20 Cal.3d at p. 586.) In *American Motorcycle* the court concluded its adoption of principles of comparative negligence in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], which eliminated the all-or-nothing doctrine of contributory negligence, "does not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury." (*American Motorcycle*, at p. 582.) However, to minimize the hardship on defendants from such a rule, "the *American Motorcycle* court held (1) that plaintiffs should no longer have the unilateral right to determine which defendant or defendants should be included in an action and that defendants who were sued could bring other tortfeasors who were allegedly responsible for the plaintiff's injury into the action through cross-complaints [citation], and (2) that any defendant could obtain equitable indemnity, on a comparative fault basis, from other defendants, thus permitting a fair apportionment of damages among tortfeasors." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1197 [246 Cal.Rptr. 629, 753 P.2d 585].) "Subsequent cases established that under the principles articulated in *American Motorcycle* . . . a defendant may pursue a comparative equitable indemnity claim against other tortfeasors either (1) by filing a cross-complaint in the original tort action or (2) by filing a separate indemnity action after paying more than its proportionate share of the damages through the satisfaction of a judgment or through a payment in settlement." (*Id.* at pp. 1197–1198.)

These doctrinal advances went a considerable distance toward ensuring an injury caused by two or more tortfeasors would be apportioned according to their respective shares of comparative responsibility. Nonetheless, joint and several liability imposed on the remaining defendants the risk of paying more than their proportionate share if one or more tortfeasors liable for the plaintiff's damages were insolvent or otherwise unavailable to respond to a judgment. (See *Evangelatos v. Superior Court, supra*, 44 Cal.3d at p. 1199 ["[a]lthough these various developments served to reduce much of the

harshness of the original all-or-nothing common law rules, the retention of the common law joint and several liability doctrine produced some situations in which defendants who bore only a small share of fault for an accident could be left with the obligation to pay all or a large share of the plaintiff's damages if other more culpable tortfeasors were insolvent"].) To ameliorate this "inequity and injustice," at least in part, in 1986 the California electorate passed Proposition 51. (§ 1431.1, subd. (a); see *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 599 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*) ["[B]y 1986 the courts had eliminated certain inequities of the former tort recovery system, but so-called 'deep pocket' defendants whose fault was slight could still be saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full proportionate contribution. [Citation.] Proposition 51 sought to modify this system of recovery."].)

To effectuate the voters' intent, section 1431.2, subdivision (a), states, "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." "Economic" damages encompass all "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (§ 1431.2, subd. (b)(1).) "Non-economic" damages are such "subjective, non-monetary losses [as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (§ 1431.2, subd. (b)(2).) Thus, "Proposition 51 . . . retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses," but "the more intangible and subjective categories of damage [are] limited . . . to a rule of strict proportionate liability. With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury." (*DaFonte, supra,* 2 Cal.4th at p. 600.)

  2. *An Original Tortfeasor Is Jointly Liable to the Injured Party for Aggravation of Personal Injuries Caused by Negligent Medical Treatment*

  ■ In *Ash v. Mortensen* (1944) 24 Cal.2d 654, 657 [150 P.2d 876] (*Ash*) the Supreme Court, citing its decision 20 years earlier in *Dewhirst v. Leopold*

(1924) 194 Cal. 424, 433 [229 P. 30], observed, "It is settled that where one who has suffered personal injuries by reason of the tortious act of another exercises due care in securing the services of a doctor and his injuries are aggravated by the negligence of such doctor, the law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment and holds him liable therefor." However, the *Ash* court held the fact the plaintiff, who had initially been injured in an automobile accident, could have obtained full compensation for her damages in her first action asserted against only the negligent motorist (the original wrongdoer) "does not establish that she has been so compensated." (*Ash*, at p. 657.) "Plaintiff was at liberty to sue [the motorist] for damages resulting from the original injury alone, and to sue defendants for damages resulting from the additional injury or aggravation, in separate actions; and the order in which such actions might be brought would be immaterial." (*Ibid.*) Accordingly, the court reversed the judgment in favor of the doctors in the plaintiff's subsequent action for malpractice, finding the trial court had erred in concluding the judgment, satisfaction of record and release in the plaintiff's action against the motorist constituted a complete defense as to them: "We are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of the injury 'if there has been full compensation for both injuries, but not otherwise.' " (*Id.* at p. 659.)[5]

■ Like the bases for joint and several liability, the doctrinal underpinnings for the line of cases represented by *Ash*, most often involving automobile accidents followed by negligent medical treatment, are causation and foreseeability: "[T]he law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment . . . ." (*Ash, supra,* 24 Cal.2d at p. 657.) "In those cases the defendant's careless driving exposed the plaintiff to a risk of physical harm. Medical treatment for the resulting injuries is a kind of physical harm for which the [original tortfeasor] defendant is liable whether or not the treatment is itself negligent. [Citations.] The important factor in those cases is that the medical treatment is closely and reasonably associated with the immediate

---

[5] Although the principle that a tortfeasor responsible for an accident is also liable for injuries occurring during medical treatment for injuries suffered in the accident is often referred to as "the *Ash* rule," as discussed, the doctrine was recognized in California at least 20 years prior to the Supreme Court's decision in *Ash, supra,* 24 Cal.2d 654. Indeed, the holding of *Ash* itself focused on the responsibility of the subsequent tortfeasor for the enhanced injuries caused by his negligent medical treatment of the victim, not the liability of the original tortfeasor.

consequences of the defendant's act and forms a normal part of its aftermath." (*Munoz v. Davis* (1983) 141 Cal.App.3d 420, 426–427 [190 Cal.Rptr. 400]; see *Blecker v. Wolbart* (1985) 167 Cal.App.3d 1195, 1201, 1203 [213 Cal.Rptr. 781] ["subsequent negligent medical treatment is foreseeable as a matter of law"; original tortfeasor "is always considered to be a proximate cause of the plaintiff's further injuries"].)

At least prior to the adoption of Proposition 51 in 1986, the rule a tortfeasor responsible for an accident is also liable for any additional injuries suffered during medical treatment following the accident was one of joint and several liability for the enhanced injuries if the medical care provider was negligent. (*Blecker v. Wolbart, supra*, 167 Cal.App.3d at pp. 1202–1203 [concept of partial indemnity among joint tortfeasors on comparative fault basis, approved in *American Motorcycle*, applies to successive tortfeasors as recognized in *Ash*]; *Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1398 [97 Cal.Rptr.2d 762] (*Kitzig*) [original tortfeasor "is also jointly and severally liable for injuries occurring during medical treatment"]; *Marina, supra*, 84 Cal.App.4th at pp. 438–439.)[6]

*Blecker v. Wolbart, supra*, 167 Cal.App.3d 1195, concerned an indemnification action between a driver who had collided with a motorcyclist, resulting in the motorcyclist's hospitalization after he broke several bones, and the anesthesiologist and five other medical defendants involved in the subsequent corrective surgery that caused the motorcyclist's death. The judgment in favor of the driver, who had previously settled with the motorcyclist's heirs, was reversed based on the trial court's error in failing to properly instruct the jury it must consider the comparative fault of the driver and the doctors in determining the extent to which the driver was entitled to be indemnified. (*Id.* at pp. 1199–1200.) The Court of Appeal held *American Motorcycle*, "allowing partial indemnity from a joint tortfeasor on a comparative fault basis [is

---

[6] The original tortfeasor's liability for enhanced injury suffered during medical treatment is not limited to additional harm caused by negligence. "If death resulted from a risk inherent in the medical treatment reasonably required to cure the injuries caused by the accident, [the original tortfeasors] would be liable irrespective of whether such treatment was rendered in a proper or a negligent manner. The question is one of causation, and where the additional harm results either from the negligence of doctors or hospitals who furnish necessary medical care, or from the materialization of a risk inherent to necessary medical care, the chain of causation set in motion by the original tort remains unbroken." (*Hastie v. Handeland* (1969) 274 Cal.App.2d 599, 606 [79 Cal.Rptr. 268]; see *Blecker v. Wolbart, supra*, 167 Cal.App.3d at p. 1201; *Munoz v. Davis, supra*, 141 Cal.App.3d at p. 426; see also Rest.2d Torts, § 457 ["[i]f the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner"].) If there was no malpractice by the doctor who treated the original injury, of course, there can be no joint liability for any of the victim's injuries.

not] antagonistic to the holding in *Ash* . . . . Nor did [*American Motorcycle*] overrule *Ash,* either explicitly or impliedly." (*Id.* at p. 1201.) In addition, the *Blecker* court explained, although *American Motorcycle* referred to " 'concurrent tortfeasors,' " for purposes of the doctrine of comparative equitable indemnity, the term properly refers to both concurrent and successive tortfeasors: "[I]t matters not whether the tortfeasors acted in concert to create a single injury, or successively, in creating distinct and divisible injury." (*Id.* at pp. 1200, fn. 2, 1203;[7] see *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852 [14 Cal.Rptr.3d 721] ["[J]oint and several liability in the context of equitable indemnity is fairly expansive. . . . [I]t is not limited to 'the old common term "joint tortfeasor" . . . .' It can apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors."]; see also *Gibson, Dunn & Crutcher v. Superior Court* (1979) 94 Cal.App.3d 347, 351–352 [156 Cal.Rptr. 326] [cross-complaint for partial indemnity on comparative fault basis by original lawyers sued for malpractice against lawyers who replaced them, based on allegations subsequent attorneys' negligence aggravated client's injuries, is analogous to medical malpractice cases in which "partial indemnification has been awarded in favor of the party who caused the first injury and against the physician whose subsequent negligence aggravated it" and "fit[s] neatly into the rationale of *American Motorcycle*"; claim for partial indemnity disallowed only for unique public policy concerns relating to lawyer-client relationship].)

The joint nature of the liability of the original and subsequent tortfeasors for the enhanced injuries caused by an accident followed by negligent medical treatment is confirmed by section 1431, which prior to adoption of Proposition 51 provided, "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several . . . ." Section 1431 still contains the same presumption of joint liability "except as provided in Section 1431.2"—that is, except that the liability of each defendant for noneconomic damages in a personal injury action based upon principles of comparative fault is several only. (See §§ 1431, 1431.2, subd. (a).)

---

[7] We recently confirmed the *Blecker* court's observation that the availability of an action for partial equitable indemnity based on principles of comparative fault is not dependent on the existence of " 'joint tortfeasors' in the classic sense of that term." (*Willdan v. Sialic Contractors Corp.* (2007) 158 Cal.App.4th 47, 56 [69 Cal.Rptr.3d 633]; accord, *Newhall Land & Farming Co. v. McCarthy Construction* (2001) 88 Cal.App.4th 769, 773 [106 Cal.Rptr.2d 10] ["joint tortfeasor includes joint, concurrent, and successive tortfeasors whose actions combine to cause the plaintiff's injury"]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 431 [261 Cal.Rptr. 626] ["term 'joint tortfeasor' as used in the comparative equitable indemnity context . . . is a broad term which includes joint, concurrent and successive tortfeasors"].)

Notwithstanding case law and statutory authority recognizing joint liability for aggravated injuries based on subsequent negligent medical treatment, the Reininks argue joint and several liability in these circumstances depends on the existence of an "indivisible injury" caused by multiple tortfeasors, not two separate and distinct physical injuries, which they assert exist in this case.[8] Without question, over the years the concept of "indivisibility" in tort law has been somewhat amorphous; and a number of cases do refer to joint and several liability for "indivisible injuries" without additional explanation. (See, e.g., *American Motorcycle, supra,* 20 Cal.3d at pp. 586–587; *Willdan v. Sialic Contractors Corp., supra,* 158 Cal.App.4th at p. 56.) Yet, as discussed, the modern (that is post-*American Motorcycle*) cases are essentially uniform in holding for purposes of joint and several liability the plaintiff's injuries need only be causally interrelated, not physically inseparable. (See, e.g., *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc., supra,* 119 Cal.App.4th at p. 852; *Blecker v. Wolbart, supra,* 167 Cal.App.3d at p. 1203; *Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1115 [103 Cal.Rptr.2d 858] ["Joint tortfeasors may act in concert or independently of one another. [Citation.] '. . . What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done.' "]; *TSI Seismic Tenant Space, Inc. v. Superior Court* (2007) 149 Cal.App.4th 159, 167, fn. 3 [56 Cal.Rptr.3d 751] [same].)

The concept, at bottom, is one of legal causation (that is, are multiple tortfeasors responsible for the plaintiff's injuries), not the precise nature of the resulting damage. As the Supreme Court explained in *American Motorcycle, supra,* 20 Cal.3d at page 587, "[T]he 'joint and several liability' label . . . simply embodies the general common law principle . . . that a tortfeasor is liable for any injury of which his negligence is *a* proximate cause." (See generally Rest.3d Torts, Apportionment of Liability, § 26, p. 320 [unless damages can be divided by causation, "the damages are indivisible and thus the injury is indivisible"].)

---

[8] The Reininks attempt to support this argument with language from the Supreme Court's decision in *Ash, supra,* 24 Cal.2d 654. However, the discussion of a "single indivisible injury" in *Ash* concerned only the effect of a settlement and release given to one of several joint tortfeasors, not the issue of "divisibility" as it relates to the existence of joint and several liability: "It has been held in some cases involving unliquidated tort demands that the payment of any sum in consideration of the release of one of several joint or independent concurrent tort feasors will be presumed to have been made and accepted as full compensation or satisfaction for the alleged injury. . . . But whatever may be the rule with regard to a settlement with joint or independent tort feasors whose acts concur to produce a single injury, it does not follow that such presumption should be indulged where, as here, the injured person's claim embraces separate injuries caused by independent successive tort feasors and is liquidated by a judgment against the original tort feasor." (*Id.* at pp. 659–660, citations omitted.)

■ To the extent damages for Reinink's injured shoulder can in fact be divided by causation into distinct component parts—the original injury that resulted from the fall at the Henrys' property and the aggravation of that injury caused by Reinink's negligent treatment by Kaiser physicians— liability for each indivisible component part should be considered separately. The Henrys, if they were negligent, are solely responsible for the initial injury; liability for the indivisible enhanced or aggravated injury, however, is properly apportioned between the Henrys and the Kaiser physicians in accordance with the rules of comparative fault and section 1431.2. (See Rest.3d Torts, § 26, at p. 320 [apportionment of liability when damages can be divided by causation]; see also *Arena v. Owens-Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178, 1197–1198 [74 Cal.Rptr.2d 580].)

> 3. *Because Their Potential Liability Is Based on Culpable Conduct, Section 1431.2 Permits the Henrys to Limit Their Liability for Noneconomic Damages to Their Proportionate Share of Fault*

■ Under the established principles discussed above, the Henrys, if found liable to the Reininks, will be entitled to file a separate action seeking partial equitable indemnification from Kaiser with respect to those damages for which the Henrys and Kaiser are jointly and severally liable. (See, e.g., *Blecker v. Wolbart, supra*, 167 Cal.App.3d at p. 1201; *Marina, supra*, 84 Cal.App.4th at p. 439.) Indeed, the Reininks do not seriously argue to the contrary, acknowledging in their answer to the petition for writ of mandate that both the Henrys and Kaiser are potentially liable for the aggravated injuries caused by Kaiser.[9] Similarly, if they had complied with the applicable procedural rules, the Henrys could have filed a cross-complaint in this action seeking partial equitable indemnification from Kaiser under comparative fault principles. (See, e.g., *Evangelatos v. Superior Court, supra*, 44 Cal.3d at pp. 1197–1198; *Marina*, at p. 440.) In addition, the plain language of section 1431.2, as our Division One colleagues held in *Marina*, at page 440, also permits the Henrys (again, assuming all other procedural requirements have been satisfied) to have the jury in the Reininks' action allocate fault between the Henrys and Kaiser so that liability for noneconomic damages is borne by each in direct proportion to fault: "Section 1431.2 declares plainly and clearly that in tort suits for personal harm or property damage, no 'defendant' shall

---

[9] As discussed above, if the Henrys' and Kaiser's separate torts caused injuries that can be divided by causation (that is, there is a reasonable basis for the fact finder to determine the amount of damages attributable to the allegedly negligent medical treatment of Reinink, for which the Henrys and Kaiser are jointly responsible), then only the liability for the enhanced or aggravated injury is properly apportioned on the basis of their comparative fault. (See Rest.3d Torts, § 26, p. 320.)

have 'joint' liability for 'non-economic' damages, *and* '[e]ach defendant' shall be liable 'only' for those 'non-economic' damages directly attributable to his or her own 'percentage of fault.'" (*DaFonte, supra,* 2 Cal.4th at p. 601.)

The Reininks attempt to avoid the clear mandate of section 1431.2 by arguing the Henrys' liability for the aggravated injuries caused by Kaiser's negligence under the line of cases represented by *Ash* is "imputed" or "derivative" and, therefore, outside the rules for several liability adopted by Proposition 51. The Reininks are correct courts have held section 1431.2 inapplicable when joint liability is imposed based solely on the relationship between two tortfeasors or because of statutory mandate, not because each such party has acted in a manner causing or contributing to the plaintiff's injury—that is, when liability is imputed rather than based on actual fault or culpable conduct. For example, in *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 85 [11 Cal.Rptr.2d 454] (*Miller*), Division Three of this court held, "Proposition 51 does not shield a vicariously liable employer who is liable under the doctrine of respondeat superior from liability for noneconomic damages." The court explained, "[T]he doctrine of respondeat superior imposes liability 'irrespective of proof of the employer's fault.' [Citation.] Liability is imposed on the employer as ' "a rule of policy, a deliberate allocation of a risk." ' " (*Id.* at p. 84.) Thus, " '[v]icarious liability means that the act or omission of one person . . . is *imputed by operation of law* to another[.]' " (*Ibid.*; accord, *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 726 [28 Cal.Rptr.2d 672] ["vicarious liability is a departure from the general tort principle that liability is based on fault"].)

The *Miller* court explained section 1431.2's rule of several liability based upon comparative fault, rather than joint liability, for noneconomic damages is unsuitable to cases involving the vicarious liability of one of the defendants: "If . . . Proposition 51 shields every defendant from liability for noneconomic damages beyond that attributable to that defendant's own fault, it largely would abrogate the vicarious tort liability of persons for the acts of others. Nothing in the language or intent of Proposition 51 conveyed to the voters in June 1986 dictates such a drastic change in California tort law." (*Miller, supra,* 9 Cal.App.4th at p. 85; see also *Srithong v. Total Investment Co., supra,* 23 Cal.App.4th at p. 728 [§ 1431.2 does not apply when liability imposed vicariously by virtue of defendants' status as lessors under nondelegable duty doctrine]; *Rashtian v. Brac-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1853–1854 [12 Cal.Rptr.2d 411] [§ 1431.2 does not apply when liability imposed vicariously on vehicle owner not based upon culpability but on status as owner pursuant to permissive user statute as matter of public

policy].) In effect, "vicariously liable defendants are viewed, for policy reasons, as a single entity." (*Arena v. Owens-Corning Fiberglas Corp., supra,* 63 Cal.App.4th at p. 1197.)

Similarly, some courts have held section 1431.2 does not require apportionment of liability for noneconomic damages in a products liability action among defendants who are in the chain of distribution of a defective product. (E.g., *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 628–634 [65 Cal.Rptr.2d 532] (*Wimberly*); *Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 93–95 [54 Cal.Rptr.3d 28]; but see *Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 102 [67 Cal.Rptr.3d 100] [setting forth "split in authority regarding whether Proposition 51 applies to strict products liability cases"].) In *Wimberly*, the first case to decide whether Proposition 51 applied in strict products liability cases, the court recounted the similarities between vicarious liability and strict products liability that had been noted by the Supreme Court in *Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 813, footnote 13 [251 Cal.Rptr. 202, 760 P.2d 399]: " 'In many instances—for example, strict product liability—tort law places "direct" liability on an individual or entity which may have exercised due care in order to serve the public policies of a fair allocation of the costs of accidents or to encourage even greater safety efforts than are imposed by the due care standard. [Citation.] As a leading text on torts explains, *the modern justification for vicarious liability closely parallels the justification for imposing liability on the nonnegligent manufacturer of a product*: "What has emerged as the modern justification for vicarious liability is *a rule of policy, a deliberate allocation of risk*. The losses caused by the torts of employees, *which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business*. They are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large." ' " (*Wimberly*, at p. 630.) Based upon the similarities, and applying the reasoning of those courts that had held section 1431.2 inapplicable in vicarious liability cases, the *Wimberly* court concluded, "Proposition 51 has no application in a strict product liability case where . . . plaintiff's injuries are caused solely by a defective product." (*Wimberly*, at p. 633.) The statute is inapplicable in both contexts because liability is not based on comparative fault, and for that reason there is nothing to compare.

(See generally *Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1143–1145 [15 Cal.Rptr.3d 118] [holding coconspirators may be found jointly and severally liable for noneconomic damages].)

The Reininks note several cases have described the original tortfeasor's liability for any aggravation of injuries caused by subsequent negligent medical care as "a unique rule of causation more analogous to imputed negligence than joint feasance." (*Progressive Trans. Co. v. Southern California Gas Co.* (1966) 241 Cal.App.2d 738, 742 [51 Cal.Rptr. 116]; see *Standard Oil Co. v. Oil, Chemical etc. Internat. Union* (1972) 23 Cal.App.3d 585, 590 [100 Cal.Rptr. 354] [under principles articulated in *Ash*, "the liability of the original tortfeasor for the subsequent injury [is] *imputed by law*"]; see also *Kitzig, supra*, 81 Cal.App.4th at p. 1400 ["An original tortfeasor who is liable for a subsequent doctor's negligence based solely on *Ash v. Mortensen* principles may be said to be at 'fault' in the broad sense of the word because that party's negligence created the necessity for the medical treatment and it is foreseeable that medical malpractice may occur during that treatment. But the nature of this fault is significantly different from the fault of the subsequently negligent medical defendant, whose conduct aggravated the plaintiff's injuries. The original tortfeasor has no control over the subsequent treatment, does not participate in the patient's care and has no opportunity to protect himself against the ensuing negligence."].)[10] From these generalized characterizations of the principles of causation and foreseeability underlying the original tortfeasor's liability for subsequent aggravation of injuries caused by negligent medical care, the Reininks argue the cases excluding vicarious liability actions from the reach of section 1431.2 require the same result here.

The Reininks' conclusion simply does not follow from their premise. Section 1431.2, subdivision (a), expressly applies to "any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault" and was intended to stave off the "catastrophic economic consequences" and remedy the inequity resulting from holding a party

---

[10] The Court of Appeal in *Kitzig, supra*, 81 Cal.App.4th 1384, held section 1431.2 did not permit the subsequent tortfeasor—the dentist whose negligence aggravated the plaintiff's injuries—to limit his liability for noneconomic damages based on the comparative fault of the original, treating dentist, who had previously settled with the plaintiff—the converse of the situation presented by this writ petition. Whether we agree with the conclusion of the *Kitzig* court, which appeared to rely on pre-*American Motorcycle* case law and a record that suggested the plaintiff was suing the second dentist for damages "attributable *only* to that second tortfeasor's conduct in aggravating the initial injuries" (*Kitzig*, at p. 1402), properly awaits resolution another day. (See generally *Peatros v. Bank of America* (2000) 22 Cal.4th 147, 176, fn. 8 [91 Cal.Rptr.2d 659, 990 P.2d 539].)

bearing only a fraction of the fault financially responsible for the entirety of damages. (§ 1431.1, subd. (c) [findings and declaration of purpose].) Thus, the critical question is not whether liability is "imputed" in some manner, but the reason for imposing joint liability in a particular context. And the decisive factor is fault.

Proposition 51 (that is, § 1431.2) is inapplicable when "liability for the negligent acts of another is imposed not because of independent culpability which can be measured and evaluated but because of status or relationship." (*Rashtian v. BRAC-BH, Inc., supra,* 9 Cal.App.4th at p. 1854.) In *Miller v. Stouffer, supra,* 9 Cal.App.4th 70, liability was imposed because an employer-employee relationship existed between the defendants; in *Rashtian,* at page 1851, liability was found based on "statutory fiat"; in products liability cases liability is imposed based upon the defendant's presence in the chain of distribution (*Wimberly, supra,* 56 Cal.App.4th at pp. 627–628). In none of those cases is there any negligence or fault on the part of the party to whom liability is being imputed. (See *id.* at p. 629 ["[w]here a defendant's 'joint and several liability' is not based on his or her own negligence, but on vicarious liability, defendant cannot invoke Proposition 51 to reduce or eliminate responsibility for plaintiff's noneconomic damages"]; see also *Kesmodel v. Rand, supra,* 119 Cal.App.4th at pp. 1143–1145.) In contrast, the original tortfeasor's liability for a plaintiff's enhanced injuries caused by negligent medical care is expressly predicated on his or her culpable conduct, which set in motion the events that ultimately led the plaintiff to seek medical treatment. (*Ash, supra,* 24 Cal.2d at p. 657; *Munoz v. Davis, supra,* 141 Cal.App.3d at p. 427.) Unlike the employer whose employee engaged in tortious conduct or the owner of a vehicle that crashed as a result of the driver's negligence, the original tortfeasor in these cases is not entirely passive; and his or her liability not truly "imputed." The fault of the original tortfeasor, as well as that of the subsequent tortfeasor who aggravated the plaintiff's injuries, can be evaluated, measured and compared: Comparative fault is plainly at issue in these personal injury actions. (See *Doupnik v. General Motors Corp.* (1990) 225 Cal.App.3d 849, 866 [275 Cal.Rptr. 715] ["[f]or there to be comparative fault there must be more than one contributory or concurrent legal cause of the injury for which recompense is sought"].)

4. *Application of Section 1431.2 in Cases Involving an Original Tortfeasor's Liability for Subsequent Negligent Medical Treatment Is Not Limited to Successive Instances of Medical Malpractice*

In *Maxwell v. Powers* (1994) 22 Cal.App.4th 1596, 1600 [28 Cal.Rptr.2d 62] David Maxwell sued the trauma unit physician, Dr. Powers, who had failed to detect serious injuries to his kidney following a motorcycle accident.

At trial Maxwell requested the jury be instructed that, if negligent, Dr. Powers was also responsible for the damages flowing from Maxwell's subsequent negligent medical treatment at a hospital to which he had been transferred. In holding the trial court had erred in denying Maxwell's requested jury instruction, the Court of Appeal explained, "Regardless of the fact that Maxwell was injured in a motorcycle accident, . . . this case was tried basically as a medical malpractice case, largely on plaintiff's theory that Powers's failure to diagnose Maxwell's kidney injury and treat it for three days while Maxwell was under his care and treatment was the initial tort. The thrust of the defense case was that Powers's treatment met the standard of care and further that the injury to the kidney was aggravated while Maxwell was at Kaiser." (*Id.* at p. 1607.) Viewing the evidence most favorably to Maxwell, the court concluded it was error not to instruct the jury as requested because the evidence "support[ed] a theory with respect to medical malpractice that Powers was the original tortfeasor, that is, as the first treating physician in the chain, all subsequent medical negligence relates back to him." (*Id.* at pp. 1607–1608.)

Noting the principle holding a tortfeasor liable for subsequent injuries caused by negligent medical care "usually appears in cases involving automobile accidents" (*Maxwell v. Powers, supra*, 22 Cal.App.4th at p. 1606), the court concluded there was no meaningful difference for purposes of the rules of liability governing successive tortfeasors between actions involving an automobile accident followed by negligent medical treatment and those concerning successive acts of medical malpractice. (*Id.* at p. 1608 ["Powers does not offer any policy reason to preclude the instruction when there is successive medical care provided by a chain of doctors. Nor can we discern one."].) We fully agree and accordingly reject the Reininks' suggestion, apparently accepted by the trial court, that *Marina, supra*, 84 Cal.App.4th 435, even if not wrongly decided, is properly limited to actions involving successive acts of medical malpractice.

As discussed, in *Marina, supra*, 84 Cal.App.4th 435, Division One—for reasons substantially the same as ours—held under section 1431.2 and the rules of comparative indemnity a physician is entitled to have the jury allocate fault between her and a subsequent treating physician who had been dismissed from the action, so that liability for noneconomic damages would be borne by each in direct portion to his or her fault. (*Marina, supra*, at p. 440.) "If the jury finds [the original physician] liable to [the plaintiff], she will be jointly and severally liable for all of [the plaintiff's] economic damages (if there are any), but only severally liable for her allocated share of his noneconomic damages. There simply isn't any authority to the contrary, and certainly none that would support [the plaintiff's] effort to create a

medical malpractice exception to Proposition 51." (*Id.* at p. 441.) Similarly, there is no authority that would support the Reininks' effort to create different rules for apportioning economic and noneconomic damages in cases involving the aggravation of injuries by medical personnel depending on the nature or circumstances of the original tortfeasor's negligence.[11]

■ For purposes of applying the principles of comparative responsibility and apportionment of liability, it is simply not significant that the nature of the Henrys' alleged negligence may be different from that of the Kaiser emergency room doctors. Juries are often confronted with apportioning fault among defendants sued on different theories of liability: "Past California cases have made it clear that the 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.' " (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313–314 [11 Cal.Rptr.2d 2, 834 P.2d 696] (plur. opn. of George, J.); see *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 738 [144 Cal.Rptr. 380, 575 P.2d 1162] [rejecting argument jurors cannot measure or compare a plaintiff's negligence with a defendant's strict liability]; *Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322, 331–332 [146 Cal.Rptr. 550, 579 P.2d 441] [no reason to assume a "common sense determination of proportional fault or proportional responsibility" is beyond the ken of juries in cases involving strictly liable and negligent defendants].) ■ Whatever class of negligence is involved, under section 1431.2 in personal injury actions in which principles of comparative fault are implicated, the liability of a defendant for noneconomic damages is several only.

---

[11] Judicial Council of California Civil Jury Instructions (2007) CACI No. 3929, "Subsequent Medical Treatment," provides, "If you decide that [name of defendant] is legally responsible for [name of plaintiff]'s harm, [he/she/it] is also responsible for any additional harm resulting from the acts of others, in providing aid that [name of plaintiff]'s injury reasonably required, even if those acts were negligently performed." Citing *Marina, supra,* 84 Cal.App.4th 435, the use note to CACI No. 3929 explains, "A physician is entitled to have the jury allocate fault among other negligent physicians who subsequently treat the plaintiff and is not barred by Proposition 51 from presenting evidence regarding the negligence of those other physicians." Although perhaps too specific in its description of the facts underlying the holding in *Marina,* the use note does not, as the Reininks contend, constitute authority for limiting the application of section 1431.2 to those subsequent medical treatment cases involving successive instances of medical malpractice.

## DISPOSITION

The petition is granted. A peremptory writ of mandate shall issue directing respondent superior court to vacate its order excluding evidence of subsequent negligence by Kaiser physicians treating Reinink's injuries and to enter a new order permitting such evidence if it is otherwise admissible. The Henrys are to recover their costs in this proceeding.

Zelon, J., and Wiley, J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied May 21, 2008, S162452.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.